**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1363 and No. 14-1819
_____

CARTER BABOOLALL,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A035-748-345)
Immigration Judge: Honorable Andrew R. Arthur
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 10, 2015
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed:  April 14, 2015)
_____

OPINION*
_____

VANASKIE, *Circuit Judge*.

This petition for review of a removal order presents for our consideration the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

following three principal issues: (1) Is petitioner Carter Baboolall's conviction under N.Y. Penal Law §§ 110.00 and 220.39(1) for the attempted sale of a controlled substance an "aggravated felony" under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), so that Baboolall is not eligible for asylum pursuant to 8 U.S.C. § 1158(b)(2)(B)(i)? (2) Does his state-court controlled-substance conviction qualify as a "particularly serious crime," making him ineligible for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(B)(ii)? (3) Is Baboolall nonetheless entitled to deferral of removal to his native Guyana by virtue of the country's alleged hostility to homosexuals under the Convention Against Torture ("CAT"), *see* Convention against Torture and Other Cruel, Inhumane, or Degrading Treatment of Punishment, art. 3, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 (entered into force June 26, 1987)?  For the reasons that follow, we find that Baboolall's state-court conviction is an "aggravated felony" that qualified as a "particularly serious crime," and that he did not establish that deferral of removal is warranted.  Accordingly, we will deny the petition for review.

## I.

Baboolall entered the United States from Guyana as an 18-month-old in 1978 and was granted lawful permanent resident status.  In 1998, Baboolall was convicted in New York of attempted sale of a controlled substance in the third degree, in violation of N.Y. Penal Law, §§ 110.00 (attempt) and 220.39(1) (sale of a controlled substance).  In 2013, the Department of Homeland Security served Baboolall with a notice to appear, charging

2

that he was removable as an alien convicted of an aggravated felony and a controlled substance violation pursuant to INA §§ 237(a)(2)(A)(iii) and (B)(i), respectively, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i).

On July 3, 2013, Baboolall appeared before an Immigration Judge ("IJ") and, through counsel, denied the allegation concerning his 1998 conviction and contested his removability. Baboolall also applied for asylum, withholding of removal under the INA, and relief under Article 3 of CAT. On September 25, 2013, the IJ took evidence and heard testimony to determine whether Baboolall was removable or qualified for discretionary relief.

Baboolall claimed to be bisexual and homosexual, despite being engaged to a woman and fathering three children with another woman. He testified he was concerned that he would be subject to persecution, ridicule, and abuse if he were forced to return to Guyana because Guyanese laws criminalize homosexuality. Baboolall submitted various reports and Guyanese statutes in support of his claim. The IJ admitted several documents from the Government into evidence, including a record of Baboolall's 1998 conviction and the corresponding criminal information charging him with attempted sale of heroin.

At the close of the hearing, the IJ addressed the threshold issue of whether Baboolall's state-court controlled substance conviction constituted an "aggravated felony" under the INA, which rendered him ineligible for asylum. *See* 8 U.S.C. § 1158(b)(2)(B)(i). The IJ properly noted that there were two potential routes to make this determination: the "illicit trafficking route" and the "hypothetical federal felony route."

*Gerbier v. Holmes*, 280 F.3d 297, 313–16 (3d Cir. 2002). To qualify under the "illicit trafficking route," Baboolall's conviction must have involved "the unlawful trading or dealing of a controlled substance." *Id*. at 305. The IJ concluded that the "illicit trafficking route" inquiry was inconclusive because there was "no information in the conviction record that there was in fact an actual monetary transaction that occurred at the time of the attempted criminal sale of a controlled substance." (App. at 23.)

Accordingly, the IJ next applied the "hypothetical federal felony" approach to determine whether the 1998 conviction was an "aggravated felony." Under this analysis, a state drug conviction qualifies as an "aggravated felony" if it would be punishable as a felony under the federal Controlled Substances Act ("CSA"). *Gerbier*, 280 F.3d at 315. The IJ recognized that in making this determination, he was presumptively required to apply the "formal categorical approach," relying only on the statute of conviction and the relevant statutory definitions to decide whether the conviction qualified as an "aggravated felony." *See Singh v. Ashcroft*, 383 F.3d 144, 147–48 (3d Cir. 2004). The relevant state statute of conviction here, N.Y. Penal Law § 220.39(1), provides that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." The term "narcotic drug" is defined under New York law by reference to schedules of controlled substances set forth in N.Y. Public Health Law § 3306. *See* N.Y. Penal Law § 220.00(7). The IJ, observing that the schedule of controlled substances under federal law did not match the New York schedule of controlled substances, looked "to the conviction record for the limited

4

purpose of determining what drug was involved [in Baboolall's prosecution]." (App. at 23.)  The document charging Baboolall with a crime, the criminal information, reads, in relevant part:

> [T]his information, accuses the defendant of the crime of [attempted] CRIMINAL SALE OF A CONTORLLED SUBSTANCE IN THE THIRD (3) DEGREE, in violation of Penal Law Section 110/220.39, committed as follows: The defendant, in the County of New York, City of New York, on or about 9/27/97, Attempted to knowingly and unlawfully sell to [another individual], a narcotic drug, to wit Heroin.

(App. at 230.)  Based upon the charging instrument, the IJ concluded that the "narcotic drug" involved in Baboolall's conviction was heroin.

The IJ then determined that Baboolall could have been prosecuted federally for this conduct pursuant to 21 U.S.C. §§ 841(a) and 846,[1] the analogous federal statues to N.Y. Penal Law §§ 110.00 and 220.39(1).  Because a violation of § 841(a) for the attempted sale of heroin was punishable by a term of imprisonment "of not more than 20 years" under 21 U.S.C. § 841(b)(1)(C), the IJ concluded that Baboolall's state-court conviction qualified as an aggravated felony within the meaning of INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).

An "aggravated felony" automatically constitutes a "particularly serious crime" for purposes of disqualifying an alien for asylum.  *See* INA § 208(b)(2)(A)(ii) and (B)(i),

---

[1] 21 U.S.C. § 846 states, in relevant part, that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense[.]"

8 U.S.C. §§ 1158(b)(2)(A)(ii) and (B)(i).  Accordingly, the IJ denied Baboolall's application for asylum.

The IJ then turned to the request for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3)(A), which affords relief to an alien who would be threatened in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  Withholding of removal, however, is not available to an alien previously convicted of a "particularly serious crime."  8 U.S.C. 1231(b)(3)(B)(ii).  An alien sentenced to a prison term of at least five years is conclusively considered to have committed a "particularly serious crime."  *Id.* § 1231(b)(3)(B).  With respect to an alien whose sentence is less than five years, such as Baboolall, the INA vests in the Attorney General the discretion to decide whether the crime is "particularly serious."  *Id.*  The Attorney General, in *Matter of Y-L-*, 23 I. & N. Dec. 270 (Op. Att'y Gen. 2002), exercised that discretion in concluding that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' . . . , and only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible."  *Id.*  The Attorney General then identified what an alien would need to show, at a minimum, to rebut the presumption that the alien's drug trafficking crime was a "particularly serious" one:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in

6

the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Id.* at 276–77. The Attorney General made clear that "[o]nly if *all* of these criteria were demonstrated by an alien would it be appropriate to consider whether other, more unusual circumstances (*e.g.*, the prospective distribution was solely for social purposes, rather than for profit) might justify departure from the default interpretation that drug trafficking felonies are 'particularly serious crimes.'" *Id.* at 277 (emphasis in original).

In Baboolall's case, the IJ found that Baboolall had "failed to show that he was a merely peripheral participant in the criminal activity." (App. at 37.) Thus, his controlled substance conviction was for a "particularly serious crime," precluding withholding of removal.

Finally, the IJ addressed Baboolall's request for CAT protection. Concluding that Baboolall's claim that he would be tortured on account of his sexual preference was "speculative at best," (App. at 46), the IJ denied the request for deferral of removal under CAT.

Baboolall timely appealed the IJ's decision to the BIA. The BIA affirmed for substantially the same reasons articulated by the IJ. Baboolall now petitions this Court for review of the BIA's final order.

## II.

7

We have jurisdiction over this matter pursuant to 8 U.S.C. § 1252(a)(1). "Because the basis for [Baboolall's] removal is his conviction for an aggravated felony, our jurisdiction is limited . . . to constitutional claims or questions of law raised by his appeal." *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012) (internal quotation marks and citations omitted). "We review the BIA's legal determinations *de novo*. . . ." *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010). Although our review is limited to the BIA's decision on the merits, we may consider the IJ's decision and reasoning "insofar as the BIA deferred to it." *Roye*, 693 F.3d at 339.

## A. The Aggravated Felony Determination

The Government first argues that Baboolall waived his challenge to the IJ's aggravated felony determination because he failed to explicitly raise it before the BIA. In his appeal to the BIA, Baboolall stated that the IJ "erred in determining that [his] 1998 conviction was a removable conviction in that the statutory listing for the offense includes conduct which is both an aggravated felony and not an aggravated felony." (App. at 19.) Although not an explicit challenge to the aggravated felony determination, this assertion was sufficient to avoid waiver of the issue. As we have explained, "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005). Here, the BIA was placed on notice that the aggravated felony determination was at issue.

8

We now turn to the merits of Baboolall's claim. As both parties note, Baboolall's removability hinges on whether his 1998 New York conviction is an "aggravated felony" under the INA. An "aggravated felony" is defined as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). In turn, 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act." Thus, Baboolall's 1998 conviction constitutes an aggravated felony if the state-court offense of conviction is equivalent to a felony conviction under the CSA. *Evanson v. Att'y Gen.*, 550 F.3d 284, 289 (3d Cir. 2008).

Baboolall contends that the IJ and the BIA erred in applying the modified categorical approach by going beyond the record of conviction. Asserting that "the specific substance underlying a conviction under N.Y. Penal Law § 220.39(1) is not an element of the crime," (Appellant's Br. at 17), and that the federal and New York schedule of controlled substances were found by the IJ to not be identical, Baboolall argues that in the absence of knowing what substance was involved in his conviction, "the IJ would have had to conclude that that a conviction under N.Y. Pen. Law §220.39(1) is categorically not a conviction for an 'aggravated felony' as defined in the INA." (*Id.* at 18.) In support of this argument, Baboolall relies upon *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). In *Moncrieffe*, the Court held that if the state statute of conviction covers conduct that would not qualify as a drug trafficking felony under federal law, the alien's conviction cannot qualify as an aggravated felony. *Id.* at 1686–

9

87. Specifically, the Court ruled that "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA." *Id.* at 1693–94. *Moncrieffe* affords Baboolall no relief because the definition of "narcotic drug" in N. Y. Penal Law § 220.00(7) specifically excludes marijuana, and Baboolall has not shown that N.Y. Penal Law § 220.39(1) criminalizes conduct that would not be a felony under federal law.

Baboolall further argues that the IJ and BIA were limited to considering only the statute of conviction under our en banc opinion in *Rojas v. Att'y Gen.*, 728 F.3d 203 (3d Cir. 2013) (en banc). In *Rojas*, the petitioner was convicted under a Pennsylvania statute that prohibited "[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of . . . introducing into the human body a controlled substance in violation of this act." 35 Pa. Cons. Stat. Ann. § 780-113(a)(32). The petitioner's guilty plea colloquy did not identify the precise controlled substance involved, *Rojas*, 728 F.3d at 206, and the Pennsylvania statute was similarly silent, *see* 35 Pa. Cons. Stat. Ann. § 780-113(a)(32). We held that the categorical approach was inapplicable because there was no analogous federal statute "against which Pennsylvania's paraphernalia statute can be compared." *Rojas*, 728 F.3d at 215. As the modified categorical approach is "merely a 'tool for implementing the categorical approach,'" we concluded that it too did not apply. *Id.* at 216 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013)).

Contrary to Baboolall's assertions, *Rojas* did not discard the modified categorical approach in drug possession and distribution cases. Rather, we held that neither the categorical nor the modified categorical approach was in play because there was no comparable federal statute and the record was silent as to the precise drug involved. *Rojas*, 728 F.3d at 215–16. In this case, N.Y. Penal Law § 220.39 is analogous to 21 U.S.C. § 841(a)(1). *See Pascual v. Holder*, 707 F.3d 403, 405 (2d Cir. 2013) *adhered to on reh'g*, 723 F.3d 156 (2d Cir. 2013) (holding that a conviction under § 220.39 for attempted sale of cocaine qualifies as an aggravated felony). As the IJ recognized, because there are analogous state and federal statutes, the formal categorical approach presumptively applies. *Evanson*, 550 F.3d at 290. However, where a statute lists alternative elements that implicate the same criminal behavior, an IJ may use the modified categorical approach and review a limited set of documents, including "the criminal information," to determine what underlying conduct supported the finding of guilt. *Id.* at 291–93. Similar to a statute that includes alternative elements, the New York drug schedules delineate the various controlled substances that satisfy the "narcotic drug" requirement for purposes of N.Y. Penal Law § 220.39(1). The IJ noted that the New York schedules differ from their federal counterparts, warranting a limited review of the record of conviction to determine whether Baboolall's criminal conduct would be prosecutable as a felony under the CSA. *Compare* N.Y. Public Health Law § 3306, *with* 21 U.S.C. § 812. It may have been unnecessary for the IJ to examine the criminal information in this case because there has been no showing that the New York schedule

11

of controlled substances includes substances that are not on the federal schedule. That is, a conviction under N.Y. Penal Law § 220.39(1) may necessarily involve a substance classified as a controlled substance under federal law. *See Pascual* 707 F.3d at 405 (holding that a conviction under § 220.39 qualifies as an aggravated felony under the categorical approach). In any event, we conclude that the IJ properly employed the modified categorical approach in consulting the criminal information to determine the precise drug involved in Baboolall's 1998 conviction. *See Garcia v. Att'y. Gen.*, 462 F.3d 287, 292 (3d Cir. 2006) (holding that "we may appropriately examine [the criminal] complaint if departure from the formal categorical approach is appropriate").

Baboolall argues that the record of conviction is ambiguous as to the actual drug he attempted to sell, noting that the "Certificate of Disposition Indictment" does not identify "the specific drug involved in the conviction. . . ." (Appellant's Br. at 15.) The failure of this particular document to name the drug involved in Baboolall's crime did not preclude the IJ and BIA from looking to the criminal information as a reliable source for determining the precise controlled substance involved in Baboolall's criminal conduct. *See Garcia*, 462 F.3d at 293. Accordingly, we conclude that the Baboolall's conviction was appropriately classified as an "aggravated felony."

### B. The "Particularly Serious Crime" Determination

Baboolall additionally contends "that his 199[8] conviction is not for a 'particularly serious crime'" under *Y-L-*, 23 I. & N. Dec. 270, and therefore the IJ erred in denying his petition for withholding of removal. (Appellant's Br. at 15.) As noted

12

above, the IJ applied the holding of *Y-L-* that *all* six elements of the exceptional circumstances test must be met to justify consideration of discretionary withholding of removal when an alien has been convicted of a drug trafficking offense. *Id.* at 276–77. Baboolall has the burden of proving, by a preponderance of the evidence, that he is entitled to such relief. *See* 8 C.F.R. § 1208.16(d)(2) ("If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."). Baboolall was convicted of attempting to sell heroin, making him an active and willful participant in a serious drug transaction. We conclude that Baboolall failed to meet his burden of showing that his involvement was "merely peripheral" and, thus, the IJ properly denied his petition for withholding.

## C. **Denial of Relief under CAT**

Baboolall next asserts that the IJ erred in denying him relief under CAT. Baboolall's challenge on this point is purely factual, as he criticizes the IJ's evaluation of the evidence. (Appellant's Br. at 22–26.) As the Government points out and we previously noted, our jurisdiction is limited to constitutional claims and questions of law. *See* 8 U.S.C. §§ 1252(a)(2)(C) and (D). Indeed, in his reply brief, Baboolall states that he is essentially challenging the IJ's "finding regarding what is likely to happen if Petitioner's [sic] is removed." (Appellant's Reply Br. at 11.) A conclusion as to what will happen to him upon his return to Guyana is a finding of fact and, thus, outside our

13

jurisdiction. *See Kaplun*, 602 F.3d at 271 ("what is likely to happen to the petitioner if removed" is a finding of fact).

We nonetheless retain jurisdiction to resolve whether the undisputed factual record supports the BIA's legal conclusions concerning CAT. *Toussaint v. Att'y Gen.*, 455 F.3d 409, 412 n.3 (3d Cir. 2006).[2] Baboolall carries the burden of establishing "'that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" *Kaplun*, 602 F.3d at 268 (quoting 8 C.F.R. § 208.16(c)(2)). "Torture" is the deliberate infliction of "severe pain or suffering . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). As the IJ and the BIA noted, the evidence established that attitudes toward homosexuals in Guyana are mixed, laws against homosexual activity go largely unenforced, and the occasional police harassment of homosexuals is not condoned, propagated, or supported by the Guyanese government. Accordingly, the BIA had ample grounds for finding that Baboolall failed to demonstrate it was more likely than not he would be tortured.

### III.

For the reasons discussed above, we will deny the petition for review.

---

[2] As reflected herein, we have jurisdiction over the questions of law that Baboolall raises, and thus we deny the motion to dismiss for lack of jurisdiction.